UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| KELLI DAVIS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, § § § § <br><br>PLAINTIFF § § § § <br><br>v.  § § <br><br>CAPSTONE CYPRESS OPCO, LLC D/B/A CYPRESS PLACE ASSISTED LIVING, MME CAPITAL HOLDINGS, LLC AND BEJE FOSTER, INDIVIDUALLY, § § § § § § § <br><br>DEFENDANTS § | CIVIL ACTION NO. 2:25-cv-235 |

**DEFENDANTS' RESPONSE IN OPPOSITION TO
PLAINTIFF'S MOTION FOR NOTICE**

Defendants Capstone Cypress OpCo, LLC d/b/a Cypress Place Assisted Living ("Cypress"), MME Capital Holdings, LLC ("MME"), and Beje Foster ("Foster") (Cypress, MME, and Foster collectively referred to as "Defendants") file their Response to Plaintiff's Motion for Notice [Doc. 16] (the "Motion") and would respectfully show the Court as follows:

**I.
INTRODUCTION**

By seeking the authority from the Court to send her proposed notice, Plaintiff blatantly ignores the existence of 130 valid Arbitration Policies and Procedures executed by former and current hourly, non-exempt employees of Cypress. The district court lacks discretion to authorize Plaintiff to send notice to any current or former employees that have valid arbitration agreements covering the claims asserted in this FLSA action. Notwithstanding the numerous arbitration agreements, the underlying claims do not give rise to the collective action mechanism under the

FLSA. The merits of putative collective member's claims against Defendants are highly individualized and will turn on the actions taken by each individual putative collective member. Put simply, the merits question at issue in the underlying action cannot be answered for the collective as a whole. The Court should deny Plaintiff's Motion for Notice.

## II.
## FACTUAL BACKGROUND

A.  **Cypress Utilizes an Arbitration Policy and Procedures.**

Cypress began operating the facility located at 100 W. Douglas Street, Jefferson, Texas 75657 (the "Facility") on January 1, 2021. Exhibit 1, Darnell Declaration, ¶ 2. From the time Cypress began operating the Facility through the present, Cypress has employed a total of approximately 150 hourly, non-exempt employees. Of this total Cypress employs approximately of 25 current hourly, non-exempt employees. leaving approximately 125 former hourly, non-exempt employees. *Id*. at ¶¶ 3-4. Cypress has been having its hourly, non-exempt employees execute two versions of Acknowledgment and Receipts of Arbitration Policy and Procedures since it began operating the Facility in January of 2021. *Id*. at ¶ 6. By executing the Acknowledgement and Receipt of Arbitration Policy and Procedures, each employee acknowledges that they have been provided with Cypress's Arbitration Policy and Procedures (the "APP"), and attest that they understand:

> that by continuing my employment with the Company (or by accepting future employment with the Company after receiving the [APP]) [they] agree to submit to binding arbitration (under the [APP]) any and all claims, disputes or controversies that exist nor or arise later between [them] and the Company or between [them] and any Company employees, officers, partners, owners or affiliated companies, including claims, disputes and controversies arising before, during and after my employment with the Company.

Exhibits 1-B, 1-C.

Both versions of the APPs also classify "claims for wages or other compensation;" "claims for violation of any federal, state, or other governmental law, statute, regulation or ordinance;" and "any and all claims challenging the validity or enforceability of [the APP] (in whole or in part) or challenging the applicability of the [APP] to a particular dispute or claim" as "Claims Subject to Arbitration." Darnell Declaration, ¶ 7, Exhibits 1-B, 1-C.

Each of the 25 current hourly, non-exempt employees have executed an Acknowledgement and Receipt of Arbitration Policy and Procedures of Cypress's APP. 105 of the approximate 125 former hourly, non-exempt employees executed an Acknowledgement and Receipt of Arbitration Policy and Procedures of Cypress's APP. Notably, the three opt-in Plaintiffs, Loretta St. Clair, Robert St. Clair, and Brenda Scott each executed Acknowledgements and Receipts of the Arbitration Policy and Procedures, and therefore, agreed to be bound by the APPs and submit to arbitration. Darnell Declaration, ¶ 10; Exhibits 1-D, 1-E, and 1-F.

**B.      Cypress Implemented Policies Governing Hours and Breaks.**

Cypress implemented several policies and procedures relating to hours worked and requesting payment for overtime worked. Specifically, Cypress notified employees that "[a]n unpaid break is required for any employee who works a minimum of five (5) continuous hours per day." Exhibit 1-A, pp. 38-39. The Hours of Work policy further required that "[t]he length of the break period may vary from thirty (30) minutes to one (1) hour according to the needs of the department. ***Breaks are automatically deducted from timecards***." *Id*. (emphasis added). To account for an employee who works through the required break, Cypress required employees to "complete a 'Missed Break Form,' obtain supervisor approval, and submit it to Human Resources for adjustment." *Id*. Cypress further implemented a policy governing Rest Periods and Meal Periods, which states "[e]mployees not completely relieved of their work duties during a

break period will be paid for the break period or the portion of the break period that was interrupted. ***Employees are responsible for notifying their Supervisor if this occurs***." *Id*. at p. 40 (emphasis added).

## III.
## ARGUMENT & AUTHORITIES

A collective action is inappropriate here because the vast majority of the individuals who might be included in Plaintiff's proposed collective have executed arbitration agreements providing that any disputes relating to wages or other compensation and violations of federal and state law are subject to mandatory arbitration. For the same reason, Plaintiff is not similarly situated to the 130 members of the proposed collective that have executed arbitration agreements. For the members of the proposed collective who have not, for whatever reason, executed an arbitration agreement, the merits question of each of those member's claims cannot be answered collectively. Thus, if this case were to proceed as a collective action, it would result in a "cacophony of individual actions." *See Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 442 (5th Cir. 2021).

**A.     Fifth Circuit Authority Precludes the Court from Authorizing Notice to Putative Collective Members Who Signed an Arbitration Agreement.**

The FLSA provides employees the right to bring an action against an employer that failed to pay its employees overtime for work in excess of 40 hours in a workweek. 29 U.S.C. § 216(b). In an FLSA collective action, courts generally have discretion of determining which employees may receive notice of the pending FLSA action. *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 107 L.Ed.2d 480 (1989). *Hoffman-La Roche*, however, did not take into account whether putative collective members with valid arbitration agreements covering disputes relating to compensation and violations of federal and state law are eligible to receive notice under the FLSA. *See generally, id*.

Generally speaking, the Supreme Court of the United States has held that courts must honor valid agreements to arbitrate and must "respect and enforce the parties' chosen arbitration procedures." *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). Through the Federal Arbitration Act, "Congress has instructed federal courts to enforce arbitration agreements according to their terms[.]" *Id*. at 502. The Supreme Court of the United States further commented that the FLSA does not displace the Federal Arbitration Act. *Id*. at 515. *Epic Sys. Corp*. still did not focus its analysis on the question of whether district courts can authorize putative collective members who have executed arbitration agreements covering their claims to receive notice of an FLSA collective action. *See generally*, *id*.

In *In re JPMorgan Chase & Co.*, the Fifth Circuit, however, did face this question when 85% of a putative class contained employees with valid arbitration agreements covering compensation disputes. 916 F.3d 494 (2019). In that case, the putative plaintiffs requested the district court to authorize them to send notice to all of Chase's employees, regardless of whether the employee had executed a binding arbitration agreement that would cover their claims and preclude that employee from seeking relief in court. *JPMorgan*, 916 F.3d at 498. The putative plaintiffs "maintained that employees who had valid arbitration agreements would arbitrate, and those who did not would proceed in court." *Id*. The district court ultimately authorized the notice to that broad group of putative members. *Id*. at 497.

The Fifth Circuit found that "alerting [putative members] who cannot ultimately participate in the collective 'merely stirs up litigation,' which is what *Hoffman-La Roche* flatly proscribes." *Id.* at 502 (quoting *Hoffman-La Roche*, 493 U.S. at 174). The Fifth Circuit held that "*Hoffman-La Roche* does not give district courts discretion to send or require notice of a pending FLSA collective action to employees who are unable to join the action because of binding

arbitration agreements." *Id*. at 504. Therefore, the district court "erred by ordering that notice be sent to employees who signed arbitration agreements (the 'Arbitration Employees') and by requiring Chase to provide personal contact information for the Arbitration Employees." *Id*. at 498. Putative collective members with valid arbitration agreements therefore may not receive notice of pending FLSA collective actions.

> *i.* ***The APPs executed by 130 current and former hourly, non-exempt employees cover this dispute.***

> **1. Cypress is a party subject to the APPs.**

The two versions of Cypress's APPs define "Company" as "Capstone Healthcare." Darnell Deposition, p. 42:1-2; Exhibits 1-B, 1-C. "Capstone Healthcare" is a term utilized to describe the group of facilities owned and/or operated by various Capstone Healthcare entities, such as Cypress. Exhibit 2, Darnell Deposition, pp. 22:8-24:1, 42:11-18. The APPs further provide that the APPs "binds and benefits both the employee and the Company, as well as their successors, subsidiaries ***and affiliates***[.]" Exhibit 2, Darnell Deposition, pp. 40:20-42:10; Exhibits 1-B, 1-C. While encompassed under the "Capstone Healthcare" umbrella, Cypress is also a Capstone Healthcare affiliate. Exhibit 2, Darnell Deposition, pp. 22:8-24:1, 42:11-18. Cypress, therefore, is a party subject to the APPs.

> **2. The employees executed an Acknowledgement of Receipt of Arbitration Policy and Procedures.**

The 130 current and former hourly, non-exempt employees (the "APP Employees") executed an Acknowledgement of Receipt of Arbitration Policy and Procedures. Exhibits 1-B, 1-C. By doing so, the APP Employees attested that they understand:

> That by continuing my employment with the Company (or by accepting future employment with the Company after receiving the [APP]) [they] agree to submit to binding arbitration (under the [APP]) any and all claims, disputes or controversies that exist nor or arise later between

> [them] and the Company or between [them] and any Company employees, officers, partners, owners or affiliated companies, including claims, disputes and controversies arising before, during and after my employment with the Company.

Exhibits 1-B, 1-C. Therefore, by executing the Acknowledgement of Receipt of Arbitration Policy and Procedures, the APP Employees expressly agreed to the terms of the APP and to submit to binding arbitration under the APP. Exhibits 1-B, 1-C.

### 3. The claims at issue are "Claims Subject to Arbitration."

Both versions of the APPs state that:

> [c]laims and disputes covered by this [APP] include, but are not limited to: (a) all claims and disputes that an employee of the Company may now have or may in the future have against the Company, and (b) all claims that the Company may presently have or may in the future have against the employee.

Exhibits 1-B, 1-C. The APPs go on to list several specific, non-exclusive examples of claims subject to arbitration, including: (1) "claims for wages or other compensation;" and (2) "claims for a violation of any other federal, state or other governmental law, statute, regulation or ordinance[.]" Exhibits 1-B, 1-C.

Here, Plaintiff brings claims on behalf of putative collective members directly related to claims for wages or other compensation because she claims that Cypress automatically deducted thirty minutes from her daily hours despite having worked through those thirty minutes. *See generally*, Motion. Simply put, Plaintiff claims that Cypress did not fully compensate hourly, non-exempt employees, a claim that would squarely be subject to arbitration under the APP. Exhibits 1-B, 1-C. Plaintiff brings these claims as violations of FLSA, a federal law, further triggering the arbitration provision. Exhibits 1-B, 1-C.

    **4.**  **The APP Employees and Cypress further agreed that claims regarding the enforceability of the APPs must be arbitrated.**

In addition to the underlying claims being subject to the APPs, each APP also provide that "any and all claims challenging the validity or enforceability of this [APP] (in whole or in part) or challenging the applicability of this [APP] to a particular dispute or claim." Darnell Declaration, ¶ 7; Exhibits 1-B, 1-C. Thus, were any putative collective member who executed an APP to have a dispute as to the arbitrability of the FLSA claims at issue, that member must raise that dispute through arbitration, not the court system. *See Reyna v. Int'l Bank of Commerce*, 893 F.3d 373, 379 (5th Cir. 2016) (holding that because an arbitration agreement provided that challenges to validity and enforceability of agreement must be arbitrated, that challenge must be decided through arbitration, not the courts.).

   *ii.*  ***This Court does not have discretion to authorize notice being sent to the 130 APP Employees.***

The case at bar mirrors that in *JPMorgan* – all current employees and the vast majority of former hourly, non-exempt employees at Cypress have agreed to the terms of the APPs and to submit to binding arbitration under the APPs. Darnell Declaration, ¶¶ 8-9. Both versions of the APPs provide that wage/compensation disputes, claims of violations of federal law, or challenges of the validity and enforceability of the APPs are claims subject to arbitration. Darnell Declaration, ¶ 7, Exhibits 1-B, 1-C. Under *JPMorgan*, it would therefore be error to authorize Plaintiff to provide notice of the FLSA claim to the APP Employees.

**B.**  **Collective Actions Post-*Swales*.**

Employees may proceed in a collective action when they are "similarly situated." *Id.* The Fifth Circuit recently clarified the standard district courts should use in determining whether to allow a representative plaintiff to proceed with an FLSA collective action. *See Swales*, 985 F.3d

at 434–43.[1] *Swales* instructs that the district court "should identify, at the outset of the case, what facts and legal considerations will be material to determining whether a group of 'employees' is 'similarly situated.'" *Swales*, 985 F.3d at 441. To decide whether a group of employees is similarly situated, the district court must consider "whether merits questions can be answered collectively." *Id.* at 442. Notice can only go to potential participants and sending notice to those who ultimately cannot participate stirs up litigation, which is what the Supreme Court of the United States warned against. *Id.* at 441. Therefore, the district court must "rigorously scrutinize the realm of 'similarly situated' workers" before certifying a collective action to ensure that "the requested opt-in notice will go to those who are actually similar to the named plaintiffs." *Id.* at 434.

It is the plaintiffs' burden to establish that they are similarly situated. *Swales*, 985 F.3d at 443. To determine whether plaintiffs have met their burden to show that potential collective action members are similarly situated, the district court may choose to employ the three factors identified in *Lusardi*. *Loy*, 71 F.4th at 336–37; *Brunet v. GB Premium Octg Services LLC*, No. 4:21-CV-1600, 2022 WL 17730576, at *3 (S.D. Tex. Dec. 1, 2022), *report and recommendation adopted sub nom. Brunet v. GB Premium OCTC Services, LLC*, No. 4:21-CV-01600, 2023 WL 2186441 (S.D. Tex. Feb. 22, 2023). Those three factors are as follows: (1) disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to the defendant which appear to be individual to each plaintiff; and (3) fairness and procedural considerations. *Lusardi*, 118 F.R.D. at 359.

---

[1] In *Swales*, the Fifth Circuit rejected the two-step method of "conditional certification" and "decertification" introduced in *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D. N.J. 1987) *mandamus granted sub nom. Lusardi v. Lechner*, 855 F.2d 1062 (3d Cir. 1988)), which the majority of district courts had been using, "in favor of a more rigorous inquiry into whether a group of employees is in fact similarly situated." *Loy v. Rehab Synergies*, 71 F.4th 329, 336–37 (5th Cir. 2023).

In determining the first *Lusardi* factor—whether disparate factual and employment settings exist among putative class members—the court considers various aspects of the putative class members' work, including "job title, job duties, geographic location, supervision, salary, policies and procedures subjected to, the manner in which the policies and procedures were instituted, and whether actions constituting claimed violations are similar." *Brunet*, 2022 WL 17730576, at *3. "The question is whether [the putative class members] are all subjected to a common policy, plan, or practice—the same factual and employment settings." *Serrano v. Republic Servs., Inc.*, No. 2:14-CV-77, 2017 WL 2531918, at *19 (S.D. Tex. June 12, 2017) (citing *Vanzzini v. Action Meat Distribs.*, 995 F. Supp. 2d 703, 722–23 (S.D. Tex. 2014)).

With regard to the second *Lusardi* factor—the various defenses available to the defendant which appear to be individual to each plaintiff—the court is concerned with whether representative evidence can be used to make class-wide determinations and the extent to which resolution "requires such individualized inquiries that the case cannot proceed collectively." *Roussell v. Brinker Int'l, Inc.*, No. CIV.A. H–05–3733, 2008 WL 2714079, at *21 (S.D. Tex. July 9, 2008) (citing *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 585–87 (E.D. La. 2008)). "If answering this [threshold] question requires a highly individualized inquiry into each potential opt-in's circumstances, the collective action would quickly devolve into a cacophony of individual actions." *Swales*, 985 F.3d at 442.

In evaluating the third *Lusardi* factor—fairness and procedural considerations—the court "must consider the primary objectives of a collective action: (1) to lower costs to the plaintiffs through the pooling of resources; and (2) to limit the controversy to one proceeding which efficiently resolves common issues of law and fact that arose from the same alleged activity." *Mahoney v. Farmers Ins. Exch.*, No. 4:09–CV–2327, 2011 WL 4458513, at *10 (S.D. Tex. Sept.

23, 2011). The court "must also determine whether it can coherently manage the class in a manner that will not prejudice any party." *Johnson v. TGF Precision Haircutters, Inc.*, No. H03–3641, 2005 WL 1994286, at *7 (S.D. Tex. Aug. 17, 2005) (quoting *Moss v. Crawford & Co.*, 201 F.R.D. 398, 410 (W.D. Pa. 2000)).

As demonstrated below, the members of the collective proposed by Plaintiff are not similarly situated, and therefore cannot proceed as a collective, because Plaintiff's own Motion demonstrates that the proposed collective class were not "subjected to a common policy, plan, or practice[.]" *Serrano*, 2017 WL 2531918, at *19.

Cypress implemented several policies and procedures relating to hours worked and requesting payment for overtime worked. Specifically, Cypress notified employees that "[a]n unpaid break is required for any employee who works a minimum of five (5) continuous hours per day." Exhibit 1-A, p. 38-39. The Hours of Work policy further required that "[t]he length of the break period may vary from thirty (30) minutes to one (1) hour according to the needs of the department. ***Breaks are automatically deducted from timecards***." *Id*. (emphasis added). To account for an employee who works through the required break, Cypress required employees to "complete a 'Missed Break Form,' obtain supervisor approval, and submit it to Human Resources for adjustment." *Id*. Cypress further implemented a policy governing Rest Periods and Meal Periods, which states "[e]mployees not completely relieved of their work duties during a break period will be paid for the break period or the portion of the break period that was interrupted. ***Employees are responsible for notifying their Supervisor if this occurs***." *Id*. at p. 40 (emphasis added).

Plaintiff claims that the proposed collective class of Cypress employees "were subject to Cypress Place's policies of 1) reducing hours worked to minimize overtime and 2) automatically

deducting 30 minutes per day for rare or nonexistent lunch breaks." Doc. 16, ¶ 30. This claim ignores that Cypress's policies and procedures mandate that should employees work during break periods, the employee needs to notify their supervisor and execute a missed punch form. The crux of the "merits questions" is thus whether an employee worked during a break period, notified their supervisor or submitted a missed punch form, and then still did not receive payment for the time worked. Plaintiff's own Motion demonstrates how those merits questions cannot be answered collectively and instead rely on individualized facts and defenses.

First, in Ms. Davis's Declaration, she testified that she submitted three missed punch sheets during her employment with Cypress: (1) July 25, 2024; (2) July 26, 2024; and (3) August 1, 2024. Doc. 16-1, ¶ 8. Of those three missed punch sheets, Davis claims that Cypress did not reimburse her for **one**. *Id*. Receiving reimbursement for working during two breaks, but not another, does not give rise to "a common policy, plan, or practice—the same factual and employment settings." *Serrano*, 2017 WL 2531918, at *19.

Second, conversely, opt-in Plaintiff Loretta St. Clair[2] testified in her declaration that she submitted four missed punch forms while employed with Cypress. Doc. 16-2, ¶ 9. She testified that she did not receive reimbursement for any of the four 30-minute lunch breaks that she claims to have worked through. *Id*. Plaintiff presents the Court with evidence of one Plaintiff receiving reimbursement for two out of three instances of working through the 30-minute lunch break, and another who received no such reimbursement. The inconsistency of the evidence negates the existence of a common policy, plan, or practice. In fact, it demonstrates the need for individualized facts for each putative collective member to present sufficient evidence of the merits of each of their claims.

---

[2] Notably, opt-in Plaintiffs Loretta St. Clair, Robert St. Clair, and Brenda Scott all executed an APP with Cypress. Darnell Declaration, ¶ 10.

To adjudicate Plaintiff's claims, the Court will therefore need to individually assess, *inter alia*:

- Whether an employee executed one of the versions of Cypress's APPs;
- Whether an employee worked through a meal or rest period;
- Whether the employee notified Cypress through either their supervisor or submitting a missed punch form;
- Whether Cypress reimbursed the employee for the period worked; and
- The reason for Cypress's purported failure to reimburse the employee.

For these reasons, Plaintiff's Motion should be denied.

## IV.
## OBJECTIONS TO PROPOSED NOTICE

If the Court were to grant Plaintiff's Motion for Notice, which it should not, the Court should reject Plaintiff's overbroad, vague and ambiguous proposed notice. Specifically, as written, the proposed Notice would include former and current employees that agreed to Cypress's APPs and submit to arbitration and is therefore overbroad. The proposed notice is further vague and ambiguous as to the phrase "whose reported hours were cut or whose hours were reduced by 30 minutes because of a 'lunch break.'" The phrase "cut or" is vague and ambiguous because that language could result in the inclusion of two groups of employees: (1) those whose hours were "cut" (which is not the basis of Plaintiffs' position) or (2) those whose hours were reduced because of a required break (which is the basis of Plaintiffs' position). It is Defendants' understanding that Plaintiff's underlying claims relate to the required lunch break and Cypress's alleged failure to reimburse employees when the employees reported they worked during that break. In that event, employees whose hours were "cut" would not be encompassed in the underlying claims.

To address the foregoing objections, Defendants propose the following revised language in the event the Court were to grant Plaintiff's Motion for Notice:

> **All current and former Cypress Place hourly, non-exempt employees who worked for Cypress Place in Jefferson, Texas within the past three years, who did not execute an Acknowledgement and Receipt of Arbitration Policy and Procedures, whose hours were reduced by 30 minutes because of a "lunch break," reported working during that lunch break through a missed punch form, but did not receive a reimbursement for the time worked.**

## CONCLUSION AND PRAYER

Defendants respectfully request that the Court deny Plaintiff's Motion for Notice. Alternatively, if the Court were to authorize Notice, Defendants request that the Court sustain their objections to Plaintiff's proposed notice and authorize the notice as revised by Defendants.

Respectfully submitted,

**HALLETT & PERRIN, P.C.**

By: */s/ Barrett C. Lesher*
Barrett C. Lesher
Attorney in Charge
State Bar No. 24070137
blesher@hallettperrin.com
Elizabeth M. Reed
State Bar No. 24116945
ereed@hallettperrin.com
1445 Ross Avenue, Suite 2400
Dallas, Texas 75202
Telephone: (214) 953-0053
Facsimile: (214) 922-4142

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to all CM/ECF participants.

                                          */s/ Barrett C. Lesher*
                                          Barrett C. Lesher