**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| KELLI DAVIS, ON BEHALF OF HERSELF AND ALL OTHERS SIMILARLY SITUATED, | § § § § | |
| PLAINTIFF, | § § | |
| v. | § § § | CA NO. 2:25-cv-235-JRG-RSP |
| CAPSTONE CYPRESS OPCO, LLC D/B/A CYPRESS PLACE ASSISTED LIVING, MME CAPITAL HOLDINGS, LLC AND BEJE FOSTER, INDIVIDUALLY, | § § § § § | |
| DEFENDANTS. | § § | |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR NOTICE**

Defendants oppose notice on two grounds: that 130 of approximately 150 hourly employees signed one of two arbitration agreements that bar notice under Fifth Circuit precedent, and that the thirty-minute auto-deduction is not common to the collective because employees can correct it.[1]  Defendants cannot meet their burden on either argument.  Because neither version of the arbitration agreement names Defendant Capstone-Cypress OpCo, LLC, Defendants cannot compel arbitration against any putative collective member.  Additionally, the Rule 30(b)(6) testimony of Defendants' own corporate representative establishes that Defendants' auto-deduction is uniform across every hourly employee at every Capstone facility and that the missed punch form process is itself a uniform burden.

---

[1] Plaintiff Kelli Davis did not sign either version of the arbitration agreement, the arbitration dispute concerns only the putative collective.

**I.      Both Versions of the Arbitration Agreements Are Unenforceable.**

Defendant Capstone-Cypress OpCo, LLC is not named as a party in either version of the Arbitration Policy and Procedures. The first arbitration agreement (Bates 832–37)[2] identifies the contracting party on its signature page as "Southwest LTC-Austin ALF, Inc. DBA Colonial Gardens of Austin." "Capstone Healthcare" is added beneath Southwest LTC in different font and there is no signature. The second arbitration agreement (Bates 838–42)[3] identifies the contracting party as "Capstone Healthcare and affiliates" and is signed by Matthew Moman, but there is no entity called "Capstone Healthcare."  Importantly, Capstone-Cypress Opco, LLC ("Capstone Cypress") is not named in either agreement.

**A.      Defendants Must Prove a Valid Agreement was Formed under Texas law.**

At the notice stage, Defendants bear the burden of proving by a preponderance that putative collective members are bound by valid arbitration agreements. *In re JPMorgan Chase*, 916 F.3d 494; 502–03 (5th Cir. 2019).  Texas formation law governs that inquiry, and Defendants bear the burden of establishing each contract element. *Id*. at 502; *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 228 (Tex. 2003); *Trujillo v. Volt Mgmt. Corp.*, 846 F. App'x 233, 236 (5th Cir. 2021) (unpublished) (citing *Davidson*). The presumption favoring arbitration does not apply to disputes about whether a valid agreement was formed; it "arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists." *Davidson*, 128 S.W.3d at 227; *see also Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537–38 (5th Cir. 2003) (federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement).  Texas contract formation requires (1) offer; (2) acceptance in strict compliance; (3)

---

[2] Defendants' Response, Exhibit 1-B, Dkt. 22-1, pp. 52-57.
[3] Defendants' Response, Exhibit 1-C, Dkt. 22-1, pp. 58-62.

meeting of the minds; (4) each party's consent; and (5) execution and delivery with mutual intent to be bound. *Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 689 (5th Cir. 2018).

Where the actual employer is not named in the arbitration agreement, the elements set out above are not satisfied: no offer was extended by that employer, no meeting of the minds occurred between the employee and that employer, and no contract was formed.

For example, in *Morphis v. Federal Home Loan Mortgage Corp.*, 2002 WL 1461930 (N.D. Tex. July 3, 2002), the court denied an employer's motion to compel arbitration where the employer was not named as a party in the employment agreement containing the arbitration clause. Although the employer's mark appeared in the agreement's signature block and the employee had sued the employer by name, the court refused to substitute the employer's name for the entity expressly designated as "Employer" in the agreement's preamble, finding that Texas law does not presume agency and that the record contained no evidence establishing the relationship between the two entities. *Id*. at *4.  In *Ahlstrom v. DHI Mortg. Co., Ltd., L.P.*, 21 F.4th 631, 636 (9th Cir. 2021), the Ninth Circuit ruled in an FLSA case that a subsidiary employer could not compel arbitration against an employee using an arbitration agreement that was signed with the parent company, when the actual employer (the subsidiary) was not named or identified in that agreement.  Similarly, the Seventh Circuit applied a similar principle in *Goplin v. WeConnect, Inc.*, 893 F.3d 488 (7th Cir. 2018), an FLSA collective in which the named employee signed an arbitration agreement referring throughout to AEI, while his actual employer was WeConnect. The court refused to compel arbitration because WeConnect was "not a party to the arbitration agreement it sought to enforce." *Id.* at 490–92. The same principle applies here with greater force: the entities named in both arbitration agreements are either completely unrelated to Capstone-Cypress or non-existent.

3

**B.**        **Version 1 (Effective April 1, 2017) is Unenforceable**

The first version of the arbitration agreement (Bates 832–37) with a signature page at Bates 836, identifies the contracting party with three stacked labels: "SOUTHWEST LTC-AUSTIN ALF, INC.," "DBA COLONIAL GARDENS OF AUSTIN," and "Capstone Healthcare" added beneath in different typeface. The employer's signature line is blank.

None of these labels identifies Capstone-Cypress. Southwest LTC-Austin ALF, Inc. is a separate Texas entity with no corporate relationship to Capstone-Cypress. *See* 30(b)(6) deposition of Amanda Darnell, attached as Exhibit A, 34:1–10. Darnell and Mr. Moman previously worked for Southwest LTC before Capstone-Cypress existed; the agreement is a template they obtained during their employment with Southwest. *Id.* at 34:11–35:6; 32:1-5.  The agreement bears an "adopted effective" date of April 1, 2017, more than three and a half years before Capstone-Cypress was formed in late 2020. *Id.* at 35:17–23, 35:25–36:2, 64:18–65:13. The "Capstone Healthcare" label beneath the Southwest LTC name does not cure the defect because no such entity exists.  Indeed, Darnell testified, on behalf of Capstone-Cypress, that she does not know whether Capstone Healthcare is registered or chartered as a legal entity anywhere; she described it only as "the common phrase we use for our communities." *Id.* at 42:11–25, 43:11–25, 44:1.

The notice provision in Paragraph 1 compounds the problem; it directs the employee's arbitration demand to "Colonial Gardens of Austin, Attention: Nursing Home Administrator, 3706 Adelphi Lane, Austin, TX 78727," a wholly unrelated entity in a different city. *See* Exhibit A at 38:9–39:8.

4

**C.        Version 2 (Adopted December 1, 2023) is Also Unenforceable.**

The second version of the arbitration agreement (Bates 838–42) states it was adopted effective December 1, 2023. Its signature page identifies the contracting party as "Capstone Healthcare and affiliates." Darnell testified this agreement was signed by Matthew Moman.[4] Capstone-Cypress is not named.

The signature page does not save the agreement because the entity signed for, "Capstone Healthcare," does not exist as a legal entity. Darnell, on behalf of Capstone-Cypress, admitted that she had no idea whether Capstone Healthcare is registered, chartered, or operates as anything other than "the common phrase we use for our communities." Exhibit A, 42:11–25, 43:11–25, 44:1. Asked to name a single legal entity falling under the Capstone corporate "umbrella," she could list only d/b/a's and could not confirm any corporate name. *Id.* 23:1–24:13. Further, the "and affiliates" catchall does not solve Defendants' problem, as Darnell testified the term is not defined anywhere in the agreement and Capstone-Cypress is not identified by name as an affiliate. *Id.* at 47:1–7.

**II.        The Putative Collective Members Are Similarly Situated.**

Defendants' Rule 30(b)(6) representative confirmed under oath that the auto-deduction is uniform across every Capstone facility. The thirty-minute deduction applies automatically each day to every hourly employee who works at least five hours; the deduction is executed through Defendants' biometric timekeeping system; and the system applies no rounding and no verification that any meal break was actually taken. Exhibit A at 48:24–49:25; 50:8–11; 51:13–52:5. Compensation practices are "the same across all of the companies" and "uniform." *Id.* at 29:9–14. Whatever policy applies to one Capstone facility "would be applicable to" the others.

---

[4] Darnell assumed Moman was President of president of all the Capstone corporate entities and LLCs, including Capstone-Cypress Opco, LLC, although she was unsure. Darnell Deposition, 47:13-25.

*Id.* at 28:25–29:8. The Fifth Circuit in *Swales* directs district courts to examine whether putative collective members share material facts and legal considerations bearing on the FLSA claim. *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 441 (5th Cir. 2021). Distinctions among employees defeat collective treatment only when they "make a difference relevant to the legal issues presented." *Loy v. Rehab Synergies, L.L.C.*, 71 F.4th 329, 339 (5th Cir. 2023). Variations in job title or assignment make no legal difference because the challenged policy operates through the timekeeping system itself, uniformly.

Defendants argue the missed punch form process introduces individualized inquiry. The testimony establishes the opposite. If an employee works through lunch, the thirty-minute deduction stands unless she submits a missed punch form and a supervisor approves it. Exhibit A at 52:6–13. If she does not submit, Defendants will "retro adjust" only if the supervisor later signs off. *Id.* at 52:14–53:8. The burden runs one direction: the employee must initiate, the supervisor must approve, and Defendants retain discretion to refuse. Defendants' comparison of Ms. Davis's three submissions (two reimbursed) to Ms. St. Clair's four (none reimbursed) does not show individualization. It shows that a uniform mechanism produced inconsistent outcomes turning on supervisor approval, not on whether the employee took a break.

For the above reasons, notice should issue in this case.

6

Respectfully submitted,

WELMAKER LAW, PLLC

/s/ Douglas B. Welmaker
Douglas B. Welmaker
Attorney-in-Charge
State Bar No. 00788641
505 Magrill Street
Longview, Texas 75601
Phone: (512) 799-2048
doug@welmakerlaw.com

Josef F. Buenker
The Buenker Law Firm
TBA No. 03316860
P.O. Box 10099
Houston, Texas 77206
713-868-3388
jbuenker@buenkerlaw.com

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that on June 1, 2026, the foregoing Reply was electronically filed using the Court's CM/ECF system, which will serve all counsel of record.

/s/ Douglas B. Welmaker
Douglas B. Welmaker

7